J-A20011-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE MATTER OF: B.P.E., JR. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: B.P.E., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 520 WDA 2021 |

Appeal from the Decree Entered March 25, 2021
In the Court of Common Pleas of Erie County
Orphans' Court at No(s):  85 in Adoption 2020

BEFORE:  PANELLA, P.J., BENDER, P.J.E., and McCAFFERY, J.

MEMORANDUM BY PANELLA, P.J.:                    **FILED: SEPTEMBER 23, 2021**

B.P.E. ("Father") appeals from the decree terminating his parental rights to B.P.E., Jr. ("Child").[1] While Father initially stipulated that Child was dependent, he claims the orphans' court erred in concluding that he had not made sufficient progress in addressing the circumstances that caused Child to be dependent. As we conclude the record supports the court's conclusions, we affirm.

We apply a deferential standard of review in appeals from orders terminating parental rights:

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate

_____

[1] Child's natural mother voluntarily relinquished her parental rights and is not a party to this appeal.

courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Section 2511 of the Adoption Act governs the involuntary termination of parental rights. *See* 23 Pa.C.S.A. § 2511. It requires a bifurcated analysis:

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *See In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009). Moreover, "[t]he standard of clear and convincing evidence is defined as testimony that is so clear, direct, weighty and convincing as to enable the trier

of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *Id.* (citation and internal quotation marks omitted).

Here, the court terminated Father's parental rights pursuant to Section 2511(a)(2), (5), (8), and (b). We need only agree with the court as to any one subsection of Section 2511(a), as well as Section 2511(b), to affirm. **See In re B.L.W.**, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). We conclude the court's decision is justified pursuant to Section 2511(a)(8) and (b).

We begin with Section 2511(a)(8). Section 2511 of the Adoption Act provides, in relevant part, as follows:

§ **2511. Grounds for involuntary termination**

**(a) General rule.--** The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

* * *

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

23 Pa.C.S.A. § 2511(a)(8).

Under Section 2511(a)(8), the moving party must produce clear and convincing evidence that: "(1) [t]he child has been removed from parental care for 12 months or more from the date of removal; (2) the conditions which led to the removal or placement of the child continue to exist; and (3)

termination of parental rights would best serve the needs and welfare of the child." ***In re Adoption of M.E.P.***, 825 A.2d 1266, 1275-1276 (Pa. Super. 2003). In addition, we have explained the following:

> Section 2511(a)(8) sets a 12-month time frame for a parent to remedy the conditions that led to the [child's] removal by the court. Once the 12-month period has been established, the court must next determine whether the conditions that led to the child's removal continue to exist, despite the reasonable good faith efforts of the Agency supplied over a realistic time period. Termination under Section 2511(a)(8) does not require the court to evaluate a parent's current willingness or ability to remedy the conditions that initially caused placement or the availability or efficacy of Agency services.

***In re Z.P.***, 994 A.2d 1108, 1118 (Pa. Super. 2010) (citations and quotation marks omitted).

We are also mindful that this Court has stated that a parent is required "to make diligent efforts toward the reasonably prompt assumption of full parental responsibilities." ***In re A.L.D.***, 797 A.2d 326, 340 (Pa. Super. 2002) (citation and quotation marks omitted). A parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous. ***See id.***

Father does not challenge that 12 months had passed between the initial adjudication of dependency and Erie County Office of Children and Youth's ("OCY") filing of the petition to terminate his parental rights. His appellate arguments focus on whether OCY established that he had failed to remedy the conditions that led to Child's removal from his custody.

While it is apparent Father believes that OCY's involvement in his family is unjustified, we note Father stipulated that Child was dependent due to among other things, Child's fears that Father and paternal grandfather would abusively punish him. Father also stipulated to his criminal history, Father's prior and concurrent involvement with the OCY for another child, and his aggressive behavior at a therapeutic family session at a local hospital. As a result, the court found Child dependent and directed Father to participate in mental health treatment, anger management counseling, family counseling, a psychiatric evaluation, and to sign all necessary releases for these programs. *See* N.T., 5/18/2021, at 7.

Almost immediately, Father actively resisted complying with these directives. *See id*., at 8. On several occasions, Father was verbally aggressive with OCY staff. Less than a month after the dispositional order was entered, Father was removed from a meeting with OCY staff by sheriff's deputies. *See id*. After this incident, Father's compliance with family counseling and reunification services was limited. *See id*., at 9. He also initially refused to sign releases that were necessary for OCY to evaluate the case. *See id*.

As time went on, Father's compliance with the court-ordered services ranged from non-compliant to minimal. *See id*., at 25-7. However, what remained constant was Father's hostility towards OCY and the entire dependency court system. Father continuously asserted he had done nothing wrong and believed he was the victim of a conspiracy. He often behaved in a

manner the court described as "overt belligerence." **See** Orphans' Court Opinion, 3/25/2021, at 3.

Most alarmingly, multiple participants in this proceeding reported that Father had threatened or physically menaced them. The OCY case manager testified that Father had been charged with stalking her and another caseworker – those charges were still pending at the time of the termination hearing. **See** N.T., 5/18/2021, at 24-5. Additionally, one of Father's court-appointed attorneys withdrew from representation after disclosing threats Father had made against several dependency court participants. **See** Petition for a Pre-Trial Conference, 2/23/2021; **see also** Order, 2/24/2021.

Approximately a year after the initial dependency adjudication, OCY petitioned the court to change the permanency goal to adoption. At the hearing, Father was once again so belligerent that sheriff's deputies removed him from the courtroom. **See** N.T., 5/18/2021, at 26.

At the time of the termination hearing, Father testified that the "mental health services don't help, [they] just confirm[] what I already know through religion." **See id**., at 53-4. He claimed that OCY actively coached Child to state he did not wish to return to Father's custody. **See id**., at 55-58. Father also alleged that Child revealed, out of court, that he wished to be reunited with Father. **See id**., at 55.

In contrast, Child, who was approximately 14 years old at the time of the hearing, testified that he did not wish to return to Father's custody.

Moreover, he stated that while he no longer fears Father, he views Father's influence as detrimental to his own development. *See id*., at 14; 16; 20.

OCY's case manager opined that Father had made no meaningful progress on addressing his anger management or abusive tendencies. *See id*., at 26-7. He had failed to substantially comply with the court-ordered services. He was therefore no closer to reunifying with Child than he was at the time of the initial dependency adjudication.

In his appellate brief, Father contends that the record cannot support termination under Section 2511(a)(8) because "Child's fear of his relationship with Father had subsided and … unrefuted doubt has been cast upon the Child's preference as set forth in Father's testimony." Appellant's Brief, at 19. Initially, we note the orphans' court did not credit Father's assertion of Child's out-of-court admissions. And this alone is sufficient to refute Father's argument under our standard of review.

But even if the court had credited Father's testimony, the termination of Father's rights under Section 2511(a)(8) would still be justified pursuant to the court's other findings. Father had made no progress on addressing his anger management issues or his abusive behavior towards Child. In fact, Father consistently asserted his belief that OCY's involvement in his family was unjustified. *See* N.T., 5/18/2021, at 53. Under these circumstances, we can find no error or abuse of discretion in the court's conclusion that OCY had

established by clear and convincing evidence that termination was appropriate under Section 2511(a)(8).

We therefore turn to Father's argument that OCY failed to establish that termination was justified under Section 2511(b). Pursuant to Section 2511(b), the court is required to examine whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of Child. *See In re C.M.S.*, 884 A.2d 1284, 1286-1287 (Pa. Super. 2005). "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." *Id*., at 1287 (citation omitted).

Our Supreme Court has stated the following:

> [I]f the grounds for termination under subsection (a) are met, a court shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. . . . In *In re E.M.*, 620 A.2d [481,] 485 [(Pa. 1993)], this Court held that the determination of the child's needs and welfare requires consideration of the emotional bonds between the parent and child. The utmost attention should be paid to discerning the effect on the child of permanently severing the parental bond.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (some citations and quotation marks omitted).

In a termination of parental rights case, the trial court is required to consider "whatever bonds may exist between the children and [the natural parent], as well as the emotional effect that termination will have upon the children." *In re Adoption of A.C.H.*, 803 A.2d 224, 229 (Pa. Super. 2002) (citation omitted). In conducting a bond analysis, the court is not required to use expert testimony. *See In re Z.P.*, 994 A.2d at 1121.

"The extent of any bond analysis, therefore, necessarily depends on the circumstances of the particular case." *In re K.Z.S.*, 946 A.2d 753, 763 (Pa. Super. 2008). The panel in *In re K.Z.S.* emphasized that, in addition to a bond examination, the court can equally emphasize the safety needs of the child and should consider the intangibles, such as the "love, comfort, security, and stability," the child might have with the foster parent. *Id.*, at 760 (citation omitted).

> Father asserts that while Child's testimony
>
> was clear in his preference, [Father] maintains that this testimony was coached or manufactured or was not otherwise accurate. He points to the fact that he heard and subsequently took part in a conversation with [Child] just prior to the [termination of parental rights hearing] in which [Child] informed both him and [Father's] other daughter that he had been told to say that [Child] did not want to come back to his Father. … This testimony was not directly refuted in the record.

Appellant's Brief, at 19-20. Once again, we note the orphans' court did not find Father's testimony on Child's out-of-court statement credible. On this alone, we would be justified in denying Father any appellate relief as the court's credibility findings are generally binding upon us.

But once again, even if the court had credited Father's testimony that Child desires to return to Father, the court's other findings would have been sufficient to support its conclusion that termination was appropriate under Section 2511(b). Even if Child desired to be reunited with Father, Child's other testimony, as well as testimony from OCY staff, revealed that Child's developmental and emotional needs were best served by terminating Father's

parental rights. Both members of OCY testified to dramatic improvements in Child's behavior and development after he was removed from Father's custody. **See** N.T., 5/18/2021, at 11-2; 37-8. Further, Child observed that his prior behavioral issues were a direct result of Father's abusive behavior. **See** **id**., at 19-21. Paired with the independent observations of Father's anger management issues and Father's inability to address such issues, this testimony constituted a sufficient basis for the orphans' court to conclude that Child would not suffer adverse effects from severing whatever bond remains with Father.

As Father's only challenge under Section 2511(b) is contrary to the court's credibility findings, we conclude he is due no relief. Since we have found no error or abuse of discretion in the court's analysis of Section 2511(a)(8) and (b), we affirm the decree terminating Father's parental rights to Child.

Decree affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/23/2021